Affirmed and Memorandum Opinion
filed July 12, 2011.

In
The

Fourteenth
Court of Appeals



NO. 14-10-00019-CV



Daniel Echartea, Appellant 

v.

Calpine
Corporation, Appellee 



On Appeal from
the 149th District Court

Brazoria County, Texas

Trial Court
Cause No. 45882



 

MEMORANDUM OPINION 

In this premises liability action, appellant Daniel
Echartea (“Echartea”) appeals the trial court’s order granting summary judgment
in favor of appellee Calpine Corporation (“Calpine”).  Echartea contends that
the trial court erred in granting summary judgment because (1) genuine issues
of material fact preclude summary judgment and (2) Calpine failed to
prove its affirmative defense of bankruptcy discharge.  We affirm.









I.                  
Factual and Procedural Background

      Freeport Energy
Center LP (“Freeport”) hired Calpine as the general contractor on a project for
the construction of a power plant on a site owned by Dow Chemical Company
(“Dow”).  On July 5, 2005, Calpine entered into a contract (“the contract”) with
Austin Maintenance and Construction, Inc. (“Austin”) under which Austin was to provide
construction services to Calpine in connection with the project.  Echartea was
one of Austin’s employees assigned to the project.  On March 15, 2006, at
approximately 5:45 p.m., Echartea was finishing his shift when he fell into a
hole or rut in a roadway on the project site and injured his ankle.

      On March 6, 2009,
Echartea sued Dow and Calpine asserting causes of action for negligence and
premises liability.  Dow moved for summary judgment and the trial court granted
its motion.  On October 20, 2009, Calpine filed a motion for summary judgment,
which the trial court granted on December 18, 2009.  This appeal followed.

 

II.              
Standard of Review

            We
review summary judgments de novo.  Valence Operating Co. v. Dorsett, 164
S.W.3d 656, 661 (Tex. 2005).  Calpine’s motion for summary judgment is a hybrid
traditional and no-evidence motion.  See Tex. R. Civ. P. 166a(c), (i). 
We therefore apply the established standards of review for each.  See
Brockert v. Wyeth Pharms., Inc., 287 S.W.3d 760, 764 (Tex. App.—Houston
[14th Dist.] 2009, no pet.).

            In
a traditional motion for summary judgment, the movant bears the burden of
showing that there is no genuine issue of material fact and that it is entitled
to judgment as a matter of law.  Tex. R. Civ. P. 166a(c); Joe v. Two Thirty
Nine Joint Venture, 145 S.W.3d 150, 157 (Tex. 2004).  A genuine issue of
material fact exists if more than a scintilla of evidence establishing the
existence of the challenged element is produced.  Ford Motor Co. v. Ridgway,
135 S.W.3d 598, 600 (Tex. 2004).  To be entitled to traditional summary
judgment, a defendant must conclusively negate at least one essential element
of each of the plaintiff’s causes of action or conclusively establish each
element of an affirmative defense.  Am. Tobacco Co. v. Grinnell, Inc.,
951 S.W.2d 420, 425 (Tex. 1997).  Once the defendant establishes its right to
summary judgment as a matter of law, the burden shifts to the plaintiff to
present evidence raising a genuine issue of material fact to defeat summary
judgment.  Transcon. Ins. Co. v. Briggs Equip. Trust, 321 S.W.3d 685,
691 (Tex. App.—Houston [14th Dist.] 2010, no pet.)

            A
no-evidence motion for summary judgment must be granted if (1) the moving party
asserts that there is no evidence of one or more specified elements of a claim
or defense on which the adverse party would have the burden of proof at trial, and
(2) the respondent produces no summary judgment evidence raising a genuine
issue of material fact on those elements.  See Tex. R. Civ. P. 166a(i); Mayer
v. Willowbrook Plaza Ltd. P’ship, 278 S.W.3d 901, 908 (Tex. App.—Houston
[14th Dist.] 2009, no pet.).  We sustain a no-evidence summary judgment when
(a) there is a complete absence of evidence of a vital fact, (b) the court is
barred by rules of law or of evidence from giving weight to the only evidence
offered to prove a vital fact, (c) the evidence offered to prove a vital fact
is no more than a mere scintilla, or (d) the evidence conclusively establishes
the opposite of the vital fact.  Lowe’s Home Ctrs., Inc. v. GSW Mktg., Inc.,
293 S.W.3d 283, 287–88 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (citing
Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997)).  “Evidence
does not exceed a scintilla if it is ‘so weak as to do no more than create a
mere surmise or suspicion’” that the challenged fact exists.  Akin, Gump,
Strauss, Hauer & Feld, L.L.P. v. Nat’l Dev. & Research Corp., 299
S.W.3d 106, 115 (Tex. 2009) (quoting Kroger Tex. Ltd. P’ship v. Suberu,
216 S.W.3d 788, 793 (Tex. 2006)).

            In
reviewing the granting of either type of summary judgment motion, we indulge
every reasonable inference from the evidence in favor of the non-movant,
resolve any doubts arising from the evidence in its favor, and take as true all
evidence favorable to it.  Malcomson Rd. Util. Dist. v. Newsom, 171
S.W.3d 257, 263 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).  When a
summary judgment does not specify the grounds upon which the trial court ruled,
as here, we must affirm it if any of the grounds on which judgment could be based
is meritorious.  See Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473
(Tex. 1995).

III.           
Analysis

On appeal, Echartea contends that the trial court
erred in granting summary judgment in favor of Calpine on his premises
liability claim because (1) he raised a fact issue regarding whether Calpine owed
him a duty and whether it breached that duty, and (2) Calpine failed to prove
its affirmative defense of bankruptcy discharge.

A.    Duty

The three essential elements of a negligence cause of
action are (1) the existence of a legal duty, (2) a breach of that duty, and
(3) damages proximately caused by the breach.  See D. Houston, Inc. v. Love,
92 S.W.3d 450, 454 (Tex. 2002).  The existence of a duty owed is a threshold
consideration and is a question of law for the court.  See Tex. Home Mgmt.,
Inc. v. Peavy, 89 S.W.3d 30, 33 (Tex. 2002).   Premises liability is a
special form of negligence where the duty owed by a premises owner to a person
entering on the owner’s land depends upon the status of the person at the time
the incident occurred.  See W. Invs., Inc. v. Urena, 162 S.W.3d 547, 550
(Tex. 2005).  Here, it is undisputed that (1) Calpine was the general
contractor on the construction project; (2) Calpine hired Austin, an
independent contractor, to perform construction services in connection with the
project; and (3) Echartea was Austin’s employee.  Under Texas law, the duties
owed by premises owners and by general contractors to employees of independent
contractors are generally the same.  Shell Oil Co. v. Khan, 138 S.W.3d
288, 291 (Tex. 2004).  We look to the statutory definition of duty of a
premises owner to an independent contractor and its employees to determine the
duty of a general contractor to an independent contractor and its employees.

                Section
95.003 of the Texas Civil Practice and Remedies Code, entitled “Liability for
Acts of Independent Contractors,” provides as follows:

A property owner[[1]]
is not liable for personal injury, death, or property damage to a contractor,
subcontractor, or an employee of a contractor or subcontractor who constructs,
repairs, renovates, or modifies an improvement to real property,[[2]] including
personal injury, death, or property damage arising from the failure to provide
a safe workplace unless:

(1) the property owner exercises or retains some control
over the manner in which the work is performed, other than the right to order the
work to start or stop or to inspect progress or receive reports;[[3]] and

(2) the property owner had actual knowledge of the danger
or condition resulting in the personal injury, death, or property damage and
failed to adequately warn. 

Tex.
Civ. Prac. & Rem. Code Ann. § 95.003 (West 2011).  Therefore, to establish his
claim against Calpine, Echartea had to show that (1) Calpine exercised or retained
control over the manner in which Austin, as an independent contractor, and Echartea,
its employee, performed the work, and (2) Calpine had actual knowledge of the
danger or condition that resulted in Echartea’s injury and failed to adequately
warn him.  See Abarca v. Scott Morgan Residential, Inc., 305 S.W.3d 110,
122 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

1.      Control

            Control
may be proven in two ways: (1) a contractual right of control or (2) an
exercise of actual control.  Ellwood Tex. Forge Corp. v. Jones, 214
S.W.3d 693, 700 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (citing Dow
Chem. Co. v. Bright, 89 S.W.3d 602, 606 (Tex. 2002)).  Echartea raises both
arguments in this case.

a.      Contractual
Control

            A
contract may impose control upon a party, thereby creating a duty of care.  Bright,
89 S.W.3d at 606.  “If the right of control over work details has a contractual
basis, the circumstance that no actual control was exercised will not absolve
the general contractor of liability.”  Id. (quoting Elliott-Williams
Co. v. Diaz, 9 S.W.3d 801, 804 (Tex. 1999)).  For a general contractor to
be liable for its independent contractor’s acts, it must have the right to
control the means, methods, or details of the independent contractor's work.  Ellwood,
214 S.W.3d at 700.  Further, the control must relate to the injury the
negligence causes.  Id.; Diaz, 9 S.W.3d at 804.  It is not enough
that the owner has the right to order the work to stop and start or to inspect
progress or receive reports.  See Tex. Civ. Prac. & Rem. Code §
95.003(1); Bright, 89 S.W.3d at 606.  The contractually retained right
of control must be more than a general right.  See Bright, 89 S.W.3d at
606.  “[T]he right to control the work must extend to the ‘operative detail’ of
the contractor’s work.”  Ellwood, 214 S.W.3d at 701 (quoting Chi Energy,
Inc. v. Urias, 156 S.W.3d 873, 880 (Tex. App.—El Paso 2005, pet. denied)). 
Determining whether a contract gives a right of control is generally a question
of law for the court rather than a question of fact for the jury.  Bright,
89 S.W.3d at 606.

            In
its motion for summary judgment, Calpine challenged the issue of contractual
control, arguing that “[t]here [was] absolutely no evidence that Calpine
retained control over the Facility Site or Plaintiff’s work,” and “[a]ccordingly,
there is no genuine issue of material fact that Calpine retained no [sic]
control over the premises or the manner in which Echartea’s work was to be
performed.”  In his summary judgment response, Echartea asserted that Calpine retained
contractual control over Austin’s work because it reserved to itself the duties
of “providing general site lighting” and “overall safety of the site.”  In
support of his argument, Echartea attached the contract between Calpine and
Austin as Exhibit A to his response.[4] 
Calpine did not file a reply brief.  

The contractual provision stating that the “[g]eneral
contractor will provide overall site coordination and make assignments and
decisions that best effect overall safety and overall progress of the project” demonstrates
a right of control that is merely general in nature and, as such, is
insufficient by itself to raise a fact issue.  See id.[5]  “The
Supreme Court has established that a premises owner, by requiring an
independent contractor to follow its safety rules and regulations, does not owe
the independent contractor’s employee a duty to ensure that the employee does
nothing unsafe….  Instead, the premises owner assumes only a narrow duty to
ensure that its rules or requirements do not unreasonably increase the
probability and severity of injury.”  Ellwood, 214 S.W.3d at 702 (citing
Hoechst-Celanese Corp. v. Mendez, 967 S.W.2d 354, 357–58 (Tex. 1998)).  There
is no evidence here that the general safety rules, assignments, or decisions of
Calpine increased the probability and severity of injury.  However, we find
that the contractual provision requiring Calpine to provide site lighting raises
at least a fact issue as to whether Calpine retained a right of control over
Austin and Echartea’s work, particularly in light of Echartea’s allegation that
he was injured when he stepped into a rut or hole that he could not see because
the area was dark.  See id. at 700 (“[T]he control must relate to the
injury the negligence causes.”).  Viewing the evidence in the light most
favorable to the non-movant, we conclude that Calpine was not entitled to
summary judgment on this ground because Echartea produced some evidence raising
a fact issue regarding whether Calpine retained a contractual right of control
over Echartea’s work; in doing so, he has raised a fact issue as to one element
of duty.[6]

2.      Actual
Knowledge

            In
addition to showing that Calpine had control over his work, Echartea had to
show that Calpine had “actual knowledge of the danger or condition resulting in
the personal injury, death, or property damage and failed to adequately warn.” 
See Tex. Civ. Prac. & Rem. Code Ann. § 95.003(2) (West 2011).  Section
95.003(2) requires Echartea to prove that Calpine had actual knowledge—as
opposed to constructive knowledge—of the alleged dangerous condition.  See
Ellwood, 214 S.W.3d at 700.  In its summary judgment motion, Calpine specifically
argued that (1) it had no actual knowledge of the hole or rut in the roadway
that allegedly caused Echartea’s injury; (2) it was Austin, not Calpine, who
created the ruts and holes and who was responsible for smoothing them over; and
(3) in any case, it owed no duty to warn Echartea about the condition because
the alleged hazard was open and obvious, and Echartea was aware of its
existence.

            Having
reviewed the record, we find no evidence showing that Calpine had actual
knowledge of the dangerous condition that allegedly caused Echartea’s injury.  See
Abarca, 305 S.W.3d at 122.  On appeal, Echartea suggests that Calpine knew
of the hazardous condition because “there is evidence that the location had
previously been corrected because of prior ruts.”  Specifically, when asked in
his deposition whether he knew that there were holes or ruts on the project
site that might cause him to fall, Echartea testified that he did not know
because “they came along and cleaned them up every once in a while”; however,
later in his deposition, Echartea identified “they” as Austin.  Contrary to
Echartea’s contention, this evidence does not show that Calpine had actual
knowledge of the hole or rut that caused Echartea’s injury.

Echartea also attached the affidavit of Dennis Taylor as an
exhibit to his summary judgment response.[7] 
In his affidavit, Taylor stated that the usual and customary practice is that a
landowner contracts with a general contractor who retains control over the
general safety of the operation and over all common tasks and areas.  Taylor
further stated that, as the general contractor, Calpine was responsible for
providing a safe place to work, especially in common areas such as roadways and
pathways, and for filling in ruts or holes in the common areas caused by the
passage of heavy equipment.  However, such testimony is no evidence that
Calpine had actual knowledge of the hazardous condition in question; rather, at
most, it shows that Calpine knew that it was responsible for smoothing over the
ruts and holes on the project site.

            Because
there is no evidence that Calpine had actual knowledge of the dangerous
condition that caused Echartea’s injury, the trial court properly granted
summary judgment to Calpine on Echartea’s claim.  See Ellwood, 214
S.W.3d at 700 (noting that Chapter 95 requires plaintiff to show both control
and actual knowledge of the danger in order to prevail).[8]  Accordingly,
we overrule Echartea’s first issue.[9] 


IV.            
CONCLUSION

We affirm the judgment
of the trial court.

 

                                                                                    

                                                                        /s/        Adele
Hedges

                                                                                    Chief
Justice

 

Panel consists of Chief Justice Hedges,
Justice Frost, and Justice Christopher.









                [1]
Section 95.002(1) provides
that Chapter 95 applies equally to claims against a contractor or
subcontractor.  See Tex. Civ. Prac. & Rem. Code Ann. § 95.002(1)
(West 2011).  Although
section 95.003 only refers to a property owner, agents of a property owner are
also entitled to the protection afforded under this section.  See
Fisher v. Lee & Chang P’ship, 16 S.W.3d 198, 202-03 (Tex. App.—Houston
[1st Dist.] 2000, pet. denied) (holding that defendant who oversaw
property for owner despite no formal agreement was agent of property owner to
whom section 95.003 applied); see also Padron v. L & M Props., No.
11-02-00151-CV, 2003 WL 253927, at *3 (Tex. App.—Eastland Feb. 6, 2003, no pet.)
(mem. op.) (applying chapter 95 to property management company); Nagle
v. GOM Shelf, L.L.C., No. Civ.A. V-03-103, 2005 WL 1515439, at *4 (S.D.
Tex. June 24, 2005) (holding that manager of offshore platform was owner’s
agent and, thus, entitled to protections of chapter 95).  Here, the contract
between Dow and Calpine states that Calpine is Dow’s “general contractor and
authorized representative” and that Calpine “has the authority to manage the
work” during the course of the project.  An agent is defined, in part, as
a “person or business authorized to act on another’s behalf.”  Columbia Rio
Grande Healthcare, L.P. v. Hawley, 284 S.W.3d 851, 863 (Tex 2009) (quoting
definition of “agent” from Webster’s New Universal Unabridged Dictionary 38
(1996) in parenthetical).  As Dow’s agent, Calpine is entitled to the
protection of section 95.003.





[2] Section 95.002(2) states that the claim must arise
from “the condition or use of an improvement to real property, where the
contractor or subcontractor constructs, repairs, renovates, or modifies the
improvement.”  Id.  § 95.002(2).  Although Echartea’s injury allegedly occurred
when he stepped into a rut or hole on a roadway at the project site, courts
have held that Chapter 95 applies where the injury arises from work being done
on an improvement, despite the fact that the object causing the injury is not
itself an improvement.  See, e.g., Painter v. Momentum Energy Corp.,
271 S.W.3d 388, 398 (Tex. App.—El Paso 2008, pet. denied); Fisher, 16
S.W.3d at 201.





[3]
Section 95.003(1), the first of the two elements that must be established for a
premises owner to be liable under Chapter 95, codifies the common law.  See
Dyall v. Simpson Pasadena Paper Co., 152 S.W.3d 688, 699 (Tex.
App.—Houston [14th Dist.] 2004, pet. denied) (en banc) (citing George C. Hanks,
Jr., When Sticks and Stones May Break Your Bones:  An Overview of Texas
Premises Liability Law for Business Owners, 60 Tex. B.J. 1010, 1021
(1997)).





[4]
The provisions in the contract upon which Echartea relies state as follows:

6.5       The General
Contractor will provide general site lighting.  It shall be the         responsibility
of the Contractor to provide adequate task lighting as required for          the
execution of the Contractor’s work.

. . . 

25.0     The Project Site,
laydown area and temporary facility area will be extremely             congested. 
Contractor shall coordinate his work with the work of the other          contractors
working on the site.  The General Contractor will provide overall site          coordination
and make assignments and decisions that best effect overall safety   and
overall progress of the project.





[5] Moreover, Echartea’s characterization of the provision
as a duty to provide “overall safety of the site” is inaccurate.  Rather, the
provision requires Calpine to provide “overall site coordination and
make assignments and decisions that best effect overall safety and
overall progress of the project” (emphasis added).





[6]
Because Echartea could prove that Calpine either retained a contractual right
of control or exercised actual control over his work and, further,
because we find that there is a fact issue as to contractual control, we need
not address Calpine’s argument that it did not exercise actual control.





[7]
In his affidavit, Taylor stated that he has over thirty years of safety
experience, certificates in safety, quality control, and supervision, and that
he has worked for sub-contractors on Dow facilities and is familiar with the
safety routines that are customary in the field.  Calpine did not object to
Taylor’s affidavit.  





[8]
Because we have determined that there is no evidence that Calpine had actual
knowledge of the hazardous condition, we need not consider whether Calpine
adequately warned Echartea of the danger or whether the hazard was open and
obvious.





[9]
In light of our disposition of Echartea’s first issue, we do not reach his
second issue related to bankruptcy discharge.  See Tex. R. App. P. 47.1
(requiring appellate court opinions to be as brief as practicable but to
address every issue raised and necessary to final disposition of appeal).