



# MEMORANDUM OPINION

No. 04-08-00036-CV

Jose Jorge **MORENO** and Analisa Moreno,
Appellants

v.

**BP AMERICA PRODUCTION COMPANY**, BP America, Inc., BP Products North America,
Inc., BP Pipelines (North America), Inc., BP North American Petroleum, Inc., and Pat Aube,
Appellees

From the 343rd Judicial District Court, McMullen County, Texas
Trial Court No. M-06-0005-CV-C
Honorable Janna Whatley, Judge Presiding

Opinion by:     Alma L. López, Chief Justice

Sitting:        Alma L. López, Chief Justice
                Catherine Stone, Justice
                Sandee Bryan Marion, Justice

Delivered and Filed:  September 10, 2008

AFFIRMED

Jose Jorge ("George") Moreno was injured when a conductor pipe rolled over him, injuring

him.  George and Analisa Moreno appeal the trial court's order granting summary judgment in favor

of BP America Production Company, BP America, Inc., BP Products North America, Inc., BP

Pipelines (North America), Inc., BP North American Petroleum, Inc., and Pat Aube (collectively

referred to herein as "BP").  The Morenos assert that the trial court erred in granting summary

judgment because the conductor pipe was not an improvement to real property; therefore, Chapter

95 of the Texas Civil Practice and Remedies Code did not apply to their claims. In the alternative, the Morenos contend that BP failed to conclusively establish that BP: (1) did not exercise control over the work being performed; and (2) did not have actual knowledge of the condition resulting in the injury. We affirm the trial court's judgment.

## BACKGROUND

BP retained Conductor, Inc. to drill and set conductor pipe for a well site. George Moreno was an employee of Conductor, Inc. Pat Aube was retained by BP as a consultant for the well site preparation.

Conductor, Inc. transported conductor pipe to the well site on a flatbed truck. The pipe was in forty-foot sections, and Conductor, Inc. had to weld two sections together to finish its job. Each section weighed approximately 1,700 pounds. Aube testified that he had instructed Conductor, Inc. to use a crane to remove the conductor pipe from the truck and to place the pipe into the hole. Instead of waiting for the crane to be delivered to the well site, employees of Conductor, Inc. used a bobcat to unload and move the conductor pipe. Matthew Crook, the supervisor for Conductor, Inc. at the well site, was moving a section of pipe with the bobcat when it rolled over George Moreno, injuring him.

## STANDARD OF REVIEW

A traditional motion for summary judgment is properly granted only when the movant establishes that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law on a ground expressly set forth in the motion. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). In reviewing the grant of a summary judgment, we indulge every reasonable inference and resolve any doubt in favor of the non-movant. *Id*. Additionally, we assume all evidence favorable to the non-movant as true. *Id*.

## APPLICABILITY OF CHAPTER 95

Chapter 95 of the Texas Civil Practice and Remedies Code was enacted in 1996 as part of a sweeping tort-reform package. *Ellwood Tex. Forge Corp. v. Jones*, 214 S.W.3d 693, 699 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); *Chi Energy, Inc. v. Urias*, 156 S.W.3d 873, 878 (Tex. App.—El Paso 2005, pet. denied). Chapter 95 applies only to a claim:

> (1) against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor; and

> (2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates or modifies the improvement.

TEX. CIV. PRAC. & REM. CODE ANN. § 95.002 (Vernon 2005). Under Chapter 95, a property owner is not liable for any injury to a contractor or an employee of a contractor who constructs, repairs, renovates, or modifies an improvement to real property unless: (1) the property owner exercises or retains control over the manner in which the work is performed; and (2) the property owner had actual knowledge of the danger or condition resulting in the injury. TEX. CIV. PRAC. & REM. CODE ANN. § 95.003 (Vernon 2005).

The Morenos assert that Chapter 95 is inapplicable to their claims because the conductor pipe that rolled over George Moreno was not an improvement to real property. Texas courts of appeal, however, have unanimously construed Chapter 95 broadly and held that the injury does not have to directly result from the object on which a plaintiff is working in order for Chapter 95 to apply. *Williamson v. Paccar, Inc.*, 2007 WL 2264720, at *3 (E.D. Tex. Aug. 6, 2007). Although the injuries alleged must relate to work being done by the injured party, Chapter 95 does not require that the improvement's condition or use actually cause the injury. *See Clark v. Ron Bassinger, Inc.*, No.

07-03-0291-CV, 2006 WL 229901, at *2 (Tex. App.—Amarillo Jan. 31, 2006, no pet.) (applying Chapter 95 to claims by contractor's employee who fell through a skylight opening on a roof while working for a contractor engaged in constructing a house) (mem. op.); *Phillips v. The Dow Chem. Co.*, 186 S.W.3d 121, 131-32 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (applying Chapter 95 to a claim by contractor's employee who fell from scaffolding used to access an improvement being repaired); *Fisher v. Lee & Chang P'ship*, 16 S.W.3d 198, 200-02 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (applying Chapter 95 to claims by contractor's employee who fell from a ladder used to access roof-mounted air conditioning units being repaired); *see also Spears v. Crown Central Petroleum Corp.*, 133 Fed. Appx. 129, 2005 WL 1287050, at *1-2 (5th Cir. June 1, 2005) (applying Chapter 95 to claim by contractor's employee arising from his tripping over steel-braided hoses while performing maintenance at a refinery). It is undisputed that Conductor, Inc. was engaged in the construction, repair, renovation, or modification of an improvement to real property, i.e., an oil and gas well. Because Moreno's injuries relate to this work, Chapter 95 applies.

### CONTROL AND ACTUAL KNOWLEDGE

Under Chapter 95, the Morenos had the burden to show both control and actual knowledge of the danger in order for BP to be liable. *Ellwood Texas Forge Corp.*, 214 S.W.3d at 700; *Chi Energy, Inc.*, 156 S.W.3d at 879. "An owner may be aware of the danger, but exercise no control, or he may exercise control and have no actual knowledge of the danger; in either instance, the owner is statutorily shielded from liability." *Ellwood Texas Forge Corp.*, 214 S.W.3d at 700.

Case law defines "control" in a very precise manner. *Id*. To be liable under Chapter 95, the owner must have the right to control the means, methods, or details of the independent contractor's work to the extent that the independent contractor is not entirely free to do the work his own way.

*Id.* The right to control the work must extend to the operative detail of the contractor's work. *Id.* It is not enough that the owner has the right to order the work to stop and start or to inspect progress or receive reports. *Id.* Nor is it enough to recommend a safe manner for the independent contractor's employees to perform the work. *Id.*; *see also Chi Energy, Inc.*, 156 S.W.3d at 880.

Pat Aube, BP's on-site consultant, testified that he did not instruct Conductor, Inc. regarding how to drill the conductor hole or how to unload the pipe. Aube stated he did not instruct Conductor, Inc. on how to unload, move, or install the pipe, how to unload or set up the auger used for drilling, or how to drill the hole. Matthew Crook, the supervisor for Conductor, Inc. at the well site, also stated that BP did not give Conductor, Inc. any instructions on how to operate its equipment, did not control the manner in which it conducted its work, and did not control the way the hole was drilled or how the pipe was unloaded or moved. Caleb Crook, another employee of Conductor, Inc. who was at the well site, also testified that BP did not tell Conductor, Inc. how to do any aspect of its job. The Morenos rely on evidence that Aube told Matthew Crook to wait for a crane to move the conductor pipe instead of a bobcat. As previously noted, however, it is not enough to recommend a safe manner for the independent contractor's employees to perform the work. *Ellwood Texas Forge Corp.*, 214 S.W.3d at 700; *Chi Energy, Inc.*, 156 S.W.3d at 880. Even if Aube had ordered the work to stop until the crane arrived, BP would not have exercised sufficient control to be liable under Chapter 95. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 95.003 (Vernon 2005) (providing that the right to order the work to start or stop is not sufficient control). Because we hold the evidence conclusively established that BP did not exercise control over the manner in which Conductor, Inc. performed its work, we need not address whether BP had actual knowledge

of the danger because both conditions of section 95.003 must be met before liability will be imposed upon the property owner. *See Chi Energy, Inc.*, 156 S.W.3d at 880.

**CONCLUSION**

The trial court's judgment is affirmed.

Alma L. López, Chief Justice
